# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2026

Lyle W. Cayce
Clerk

_____

No. 25-60383

_____

Chelsea Jade Knighton,

*Plaintiff—Appellee*,

*versus*

Benton County, Mississippi; Kathy Graves, *officially* and *individually*; Robert Goolsby, *officially* and *individually*; Steve Belew, *officially* and *individually*,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:22-CV-56

_____

Before Southwick, Graves, and Wilson, *Circuit Judges*.

James E. Graves, Jr.:

Chelsea Knighton was married to Robert ("Rob") Graves. They both were at least occasional drug users. Rob's mother is Kathy Graves, the Circuit Clerk of Benton County, Mississippi.

One night, after hearing that her son had passed out at a gas station, Kathy found him and took him to see Steve Belew, a parole officer. Then, Belew, Kathy, and Rob all went back to Knighton and Rob's home. Here, the parties' versions of events sharply clash. According to Belew and Kathy,

No. 25-60383

Knighton voluntarily took a drug test administered by Belew and tested positive. According to Knighton, Belew physically forced her to take a drug test before declaring that it was positive without showing it to her. In any event, Sheriff Robert Goolsby later arrested Knighton and, though the charges were later dropped, she lost custody of their children to Kathy for over a year.

Knighton sued Kathy, Belew, Goolsby, and Benton County, alleging various federal and state-law violations. The district court denied Defendants' motion for summary judgment. They now appeal.

## I. Background

Chelsea Knighton was married to Rob Graves. Kathy Graves, Rob's mother and Knighton's then-mother-in-law, is the Circuit Clerk of Benton County. Knighton and Kathy have had a long and difficult relationship. This incident took place after several years of drug-related issues.

According to Kathy, she received a phone call that Rob was passed out in his car at a gas station. She went looking for him and, after not finding him there, went to Rob and Knighton's home. She initially received no answer, so Kathy began loudly banging on the door until Rob and Knighton emerged. Kathy told Rob to get in the car, and she left with him. Knighton, in her deposition, could not recall this initial interaction and did not remember Rob coming home at all the night before.

Kathy drove towards the town square of Ashland, Mississippi and decided to stop at the office of Mississippi Department of Corrections Officer Steve Belew. As the Circuit Clerk, she knew Belew and that he had worked with drug offenders in his role as a probation officer. Belew met with Rob in his office while Kathy remained outside. In this meeting, Belew said that Rob confessed to using drugs and stated that Knighton was passed out at the house where their kids were. Rob, Kathy, and Belew all returned to the house.

No. 25-60383

As the district court noted, "[h]ere the facts diverge." According to Knighton, she was making coffee when the three arrived. Either Belew or Kathy demanded she take a drug test, but Knighton told them to leave. Belew "aggressively forced her into a bathroom and stood over her while she tried to provide a urine sample" but she could not, so Belew took her to the living room and "pinned her down with his knee, grabbed her face, pried open her mouth and forced an oral swab into her mouth." Belew announced that the test was positive for opiates but refused to show Knighton the test results.[1] Belew and Kathy then left with the children and "told her that she would be arrested."

Defendants recall the events very differently. According to them, Rob was loudly knocking on the door to get Knighton's attention and after receiving no response, they looked in the window and saw Knighton unconscious on the couch. She finally woke up and "crawled" to the door. When they entered the house, she and Rob began arguing and Kathy went to care for the children. Kathy was concerned specifically for the infant, who was breastfeeding and so could have been exposed to drugs from Knighton. Belew told Knighton that she did not need to take the drug test, but Rob forced her into the bathroom. She then agreed to take the oral drug test produced by Belew. According to him, Rob and Knighton both admitted to using fentanyl.

The parties agree, however, that Kathy requested Sheriff Robert Goolsby go to Knighton's home. Belew told Goolsby that she had tested positive for drugs and admitted to using fentanyl. Goolsby arrested Knighton and swore in an affidavit that she and Rob had used drugs in the presence of their kids. Knighton was tested for drugs multiple times after her arrest but

---

[1] Knighton also stated in her deposition that she later learned the test was expired.

No. 25-60383

never tested positive. As a result of these allegations, Knighton lost custody of her children for over a year and was briefly jailed before the charges against her were dropped.

## II. Standard of Review

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review grants and denials of summary judgment de novo. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). However, we must view the record in the light most favorable to the non-moving party. *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). While "metaphysical doubt" or "conclusory allegations" cannot create a genuine dispute of material fact, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam), testimony by a plaintiff often can. *See Byrd v. City of Bossier*, 624 F. App'x 899, 905 (5th Cir. 2015) (per curiam).

## III. Federal Claims

Knighton asserts federal claims for unlawful seizure, false imprisonment, excessive force, abuse of process, fabrication of evidence, and violation of her right to familial association.[2] Individuals acting under color of law are subject to civil suits for deprivation of federal constitutional rights. 42 U.S.C. § 1983. However, government officials may invoke qualified immunity for these suits. *E.g.*, *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). The district court denied qualified immunity for all claims against Kathy, Belew, and Goolsby, and denied summary judgment against Benton County. Each appeals.

---

[2] Knighton also initially raised a First Amendment claim, but she abandoned it below.

4

## A. Jurisdiction

We start with jurisdiction. *Linares-Rivas v. Bondi*, 139 F.4th 454, 457 (5th Cir. 2025).

We ordinarily lack jurisdiction over a denial of a motion for summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). However, we still conduct interlocutory review of a denial of qualified immunity at summary judgment. *Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011). But this review is limited, so we only review the materiality of any fact disputes, "not their genuineness." *Id.* (citation modified).

Though we have jurisdiction over the individual defendants' invocation of qualified immunity, the same is not true for Benton County. The County is not protected by qualified immunity, so we lack interlocutory jurisdiction over its appeal. *Gentry v. Lowndes Cnty.*, 337 F.3d 481, 484 (5th Cir. 2003); *see also Ibarra v. Harris Cnty.*, 243 F. App'x 830, 833 n.2 (5th Cir. 2007) (per curiam) ("[M]unicipal governments do not enjoy the same right to interlocutory appeal as their officials."). So we dismiss Benton County's appeal.

We also note that Knighton sued each of the individual defendants in their official capacities. But official capacity claims "are not subject to a qualified immunity defense," and so "are not properly before us on interlocutory review." *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 n.1 (5th Cir. 2022) (citation modified).

## B. The District Court's Analysis

The remaining Defendants first urge us to summarily vacate the district court's order for failing to perform a qualified immunity analysis. Each of the defendants moved for summary judgment based on qualified immunity, but the district court, in a relatively brief opinion that did not

mention qualified immunity, denied summary judgment because the case presents "a classic 'he said, she said' scenario" given the parties' differing deposition testimony.

"[Q]ualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Thus, district courts *must* conduct a qualified immunity analysis in every case. *See, e.g.*, *Randle v. Lockwood*, 666 F. App'x 333, 336 (5th Cir. 2016) (per curiam). Even though the district court did not conduct a qualified immunity analysis, we may still decide this appeal. *Howell v. Town of Ball*, 827 F.3d 515, 526 n.4 (5th Cir. 2016). Since discovery is complete and a remand for further analysis would only needlessly prolong this litigation, we decline Defendants' invitation to kick the can further down the road.

Turning to the merits, we first consider whether Kathy was acting under color of law and then whether to grant qualified immunity on the remaining claims.

## C. Color of Law

Kathy argues that all of the federal claims against her fail because she was not acting under color of law. She asserts that she played no part in drug testing or law enforcement as Circuit Clerk and that her role in these events was merely that of a concerned mother and grandmother.[3] We agree.

---

[3] Kathy also seems to argue that whether she was acting under color of law is a purely legal question that cannot be submitted to the jury. But that is wrong. Whether an official is acting under color of law may turn on factual disputes that must be decided by a jury. *Cf. Townsend v. Moya*, 291 F.3d 859, 862 (5th Cir. 2002) (per curiam) (concluding there was no genuine dispute of material fact regarding whether defendant was acting under color of state law).

No. 25-60383

A claim under 42 U.S.C. § 1983 may only be brought against a defendant acting "under color of law." *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Townsend*, 291 F.3d at 861 (citation modified). Government officials "performing their official duties are included whether they hew to the line of their authority or overstep it, but acts of [officials] in the ambit of their personal pursuits are generally excluded." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (citation modified). So, we must consider (1) if Kathy "misused or abused" her power as Circuit Clerk and (2) if "there is a nexus between the victim, the improper conduct and [Kathy's] performance of official duties." *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999). Whether an official is on duty is not determinative. *Gomez v. Galman*, 18 F.4th 769, 776 (5th Cir. 2021) (per curiam).

Though Officer Belew certainly would not have been involved in this investigation had it not been for Kathy, there is no evidence that Kathy used her power as Circuit Clerk to force him to act. Without any manifestation of official power, no jury could conclude she was acting under color of law. *See Bustos*, 599 F.3d at 465 (concluding defendant was not acting under color of law when he never "assert[ed] his authority as a police officer"); *cf. Tyson v. Sabine*, 42 F.4th 508, 522–23 (5th Cir. 2022) (concluding that officer was acting under color of state law when he "interwove sexual advances with his authority as a law enforcement officer"). Since there is no evidence that she invoked her authority as Circuit Clerk, she did not misuse or abuse her official power.

To be sure, Kathy likely got more law enforcement action than the average person would in these circumstances. After all, it is certainly possible that Officer Belew and Sheriff Goolsby would want to respond positively to a

7

request from a local politician. But this does not mean she acted under color of law when she herself made no manifestation of her authority or office. Without more, we cannot say there is a genuine dispute of material fact regarding whether she was acting under color of law, so she should be granted summary judgment on the federal § 1983 claims against her.

## D. Qualified Immunity

When considering a qualified immunity defense, we must determine whether the defendant violated plaintiff's constitutional rights and, if so, whether defendant violated clearly established law. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021). But we do not define clearly established law "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). So, plaintiffs seeking to overcome qualified immunity must present a case with reasonably similar factual circumstances. *Cope*, 3 F.4th at 205. However, in some circumstances, the constitutional violations may be "so obviously unlawful no precedent is required." *Terrell v. Harris Cnty.*, No. 23-20281, 2024 WL 4446408, at *2 (5th Cir. Aug. 16, 2024) (first citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) and then citing *Taylor v. Riojas*, 592 U.S. 7, 9 (2020)).

## E. Unlawful Seizure

Knighton argues that Defendants committed an unlawful seizure in violation of the Fourth Amendment when she was forced to take the drug test. She does not, however, assert a claim for an unlawful search.

A "seizure of a person must be based on probable cause particularized with respect to that person unless a constitutionally adequate substitute for probable cause exists." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009). Collecting saliva for a drug test is a search under the Fourth Amendment. *Cf. Kohler v. Englade*, 470 F.3d 1104, 1109 n.4 (5th Cir. 2006) ("It is undisputed that the collection of a saliva sample for DNA analysis is

a search implicating the Fourth Amendment."). It then follows that if the search was unreasonable, the physical seizure of Knighton to effectuate the search is also an unlawful seizure. *See Torres v. Madrid*, 592 U.S. 306, 325 (2021) ("[T]he application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued.").

Officer Belew asserts that the seizure was justified under the exigent circumstances and community caretaker doctrines. Because Knighton's baby was breastfeeding and nonresponsive, Belew argues, he was justified in forcibly testing Knighton to ensure that her baby did not need medical attention. We disagree.

Officials "investigat[ing] possible child abuse must satisfy the typical Fourth Amendment standards of a court order, consent, or exigent circumstances." *McMurry v. Weaver*, 142 F.4th 292, 300 (5th Cir. 2025). It is clear that, according to Knighton's version of the facts, neither a court order nor consent applies here. "The well-recognized exception for exigent circumstances applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 299 (citation modified). "Exigent circumstances exist when a child faces immediate danger." *Id.*

Belew's decision to force Knighton to take a drug test is not excused by exigent circumstances because, if he believed the children to be in danger, the correct course of action would be to remove them from the home—which he did. But he also chose to essentially begin gathering evidence against Knighton rather than simply removing them from the situation. So even if Belew had a reasonable basis to believe the children were in danger because of Knighton's drug use, a drug test does not assist him in resolving that danger. After all, "there is, of course, no longer any exigency if the

emergency has dissipated." *Ramirez v. Killian*, 113 F.4th 415, 422 (5th Cir. 2024). By removing the children from the home, he was removing them from immediate harm, so he had no cause to force Knighton to take the drug test. *See, e.g.*, *McMurry*, 142 F.4th at 300 (concluding no exigent circumstances for search when child faced no immediate danger); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 422 (5th Cir. 2008) (removing children from house was not justified when abuser was not at home and so children were not facing immediate danger).

Furthermore, the law was clearly established by *Gates* and *McMurry* that officials investigating alleged child abuse or neglect had to comply with applicable Fourth Amendment principles. *See McMurry*, 142 F.4th at 300–01. This is sufficient to put Belew on notice that it would be a constitutional violation to force Knighton to take a drug test when doing so was unrelated to any danger the children might face. *Cf. Missouri v. McNeely*, 569 U.S. 141, 165 (2013) ("[T]he natural dissipation of alcohol in the bloodstream does not constitute an exigency."). And *McMurry* and *Gates* "foreclosed the possibility of a lower standard justified by community caretaking," so that doctrine is inapplicable as well. *McMurry*, 142 F.4th at 301. Thus, there is a genuine dispute of material fact regarding whether Belew's actions violated the Fourth Amendment.

Sheriff Goolsby, however, is entitled to qualified immunity on this claim. He was not present during the drug test and Knighton points to no evidence that he played any role in it.

**F. False Arrest**

Knighton next brings a federal claim for false arrest under the Fourth and Fourteenth Amendments. A constitutional claim for false arrest requires a showing that there was no probable cause to arrest the plaintiff. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists when

the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* at 655–56.

Sheriff Goolsby argues that he had probable cause to arrest Knighton for child neglect based on Kathy and Belew's statements to him that she had tested positive for opioids and admitted to using fentanyl, as well as the Chancery Court testimony of a Family Protection Specialist named Kayla Reno.

While Reno's testimony does support the inference that Knighton had used drugs in the past, she did not testify until November of 2021, nine months after Knighton was arrested. So, this testimony is irrelevant to the probable cause analysis. *Robles v. Ciarletta*, 797 F. App'x 821, 830–31 (5th Cir. 2019) (per curiam) ("Indeed, probable cause is an objective inquiry based on the facts known to the officer *at the time of the arrest.*" (emphasis added)).

A police officer may rely on the statements of other officers and is entitled to qualified immunity if it was "reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009). Knighton has not argued as to why it would not have been reasonable because, even if Belew made up the results as she contends, there is no evidence that Goolsby would have known this, at least at that point. So, it was reasonable for Goolsby to rely on Belew's statements.

The question then is whether Kathy and Belew's statements to Goolsby are enough to establish probable cause.[4] Child neglect under

---

[4] Defendants argue the independent intermediary doctrine applies. But the gravamen of Knighton's argument is that they made up evidence. And that doctrine only

No. 25-60383

Mississippi law is defined as "intentionally, knowingly or recklessly commit[ing] any act or omit[ting] the performance of any duty, which act or omission contributes to or tends to contribute to the neglect or delinquency of any child." Miss. Code Ann. § 97-5-39(1)(a). Putting aside whether Knighton's alleged conduct would meet this standard,[5] her claim fails on the clearly established prong. She points to no case that "obviously resolve[s] whether the circumstances" in this case "constituted probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018). And since it is at least plausible that drug use in the home would meet the statutory definition of child neglect, she has not shown that the law was clearly established that Goolsby did not have probable cause to arrest her. So, he is entitled to qualified immunity.

Officer Belew did not participate in the arrest itself or assist in the preparation of the arrest affidavit, so he should also be granted summary judgment on this claim.

### G. Excessive Force

Knighton next brings an excessive force claim. However, Knighton admitted that Sheriff Goolsby did not use any force against her, so he should be granted summary judgment on this claim.

Turning to Officer Belew, a plaintiff bringing an excessive force claim "must show (1) an injury, (2) which resulted directly and only from the use

---

applies when officials do not "withhold any relevant information from the independent intermediary." *Cuadra v. Hou. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation modified). Knighton's argument is essentially that the Defendants accused her of trumped-up charges. So the doctrine is not sufficient to shield them from liability in this case.

[5] Using drugs in the presence of children is a separate crime, child endangerment. Miss. Code Ann. § 97-5-39(4)(a). So, it is somewhat unclear whether this conduct would also be considered child neglect under Mississippi law.

of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019). Since we are bound to accept Knighton's version of events, we agree that the force used was excessive and clearly unreasonable. Officer Belew does not dispute this and instead challenges only the injury prong.

To satisfy that element, an injury must be more than *de minimis*, but psychological injuries can nevertheless "satisfy the injury requirement." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017). Knighton stated in her deposition that she sought treatment for psychological and emotional distress relating to the incident.[6] *Cf. Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016) (considering whether evidence supported psychological distress).

Officer Belew argues that this is likely related to losing custody of her kids rather than the alleged excessive force, but this is irrelevant. While multiple aspects of this incident may have caused her psychological trauma, that is a genuine dispute of material fact, and so it is for the jury to decide whether a particular injury was caused by excessive force.

There is also a genuine dispute of material fact regarding Officer Belew's actions that is material to whether he violated clearly established law. *Byrd v. Cornelius*, 52 F.4th 265, 273 (5th Cir. 2022). Absent a specific case, an officer's actions can still violate clearly established law if it is "an 'obvious' instance of excessive force in light of the factors set forth in" *Graham v. Connor*, 490 U.S. 386 (1989). *Hanks v. Rogers*, 853 F.3d 738, 749 (5th Cir. 2017). The Court in *Graham* considered factors such as "severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[6] She also testified that she experienced "some spotting while [she] was in jail" after the incident.

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

A reasonable jury could conclude that Officer Belew's actions violated clearly established law. Under Knighton's version of events, he barged into her home, refused to leave, and forced her to take a drug test. Indeed, under these circumstances, *any* use of force would have been excessive. Police cannot simply enter someone's home, command them to submit to a drug test, and "pry" their mouth open to effectuate their demand. If the jury believes Knighton's version of events, this would be an "obvious" case under *Graham*.

## H. Fabrication of Evidence

Knighton next asserts that the Defendants fabricated evidence against her. There is a "freestanding due process right not to have officials deliberately fabricate evidence and use it to frame and bring false charges against a person." *Dean v. Phatak*, 162 F.4th 555, 565 (5th Cir. 2025) (citation modified). This claim requires that the defendant knowingly fabricate evidence. *Id.* at 567. And it is clearly established. *Good v. Curtis*, 601 F.3d 393, 398–99 (5th Cir. 2010) (noting "that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" (citation modified) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc))).

Sheriff Goolsby argues that Knighton has put forward no evidence that he specifically fabricated any evidence.[7] Knighton argues that he wrongly asserted in an affidavit that she had used drugs in front of her children.

---

[7] Goolsby also argues that Reno's later testimony confirms the Defendants' version of events. However, while Reno testified that Knighton admitted to her that she had used

No. 25-60383

There is a genuine dispute regarding whether Sheriff Goolsby fabricated evidence against Knighton because he admitted that statements made in the post-arrest affidavit were incorrect. He initially stated under oath that Knighton neglected her children by "using drugs in the presence of the child and passing out." But later in his deposition, Goolsby stated that Knighton had admitted to using drugs during the last 48 hours, but that he "never said that [she was] using them while the kids were in the house." These statements are at least possibly contradictory, so it could lead a reasonable jury to infer that he lied in the affidavit. Thus, there is a genuine dispute of material fact as to whether he fabricated the evidence in his affidavit.

Next, if a jury believes Knighton's version of events, it could conclude that Officer Belew fabricated evidence against her. Sherriff Goolsby relied on Officer Belew's statements that Knighton admitted to drug use and that she tested positive for drugs when he arrested her. Knighton contends that these were all lies. Therefore, summary judgment was appropriately denied as to Goolsby and Belew.

## I. Abuse of Process

Knighton next brings a claim for abuse of process in violation of the Fourteenth Amendment against Goolsby. However, "[t]here is no constitutional right to be free from abuse of process." *Morgan v. Chapman*, 969 F.3d 238, 247 (5th Cir. 2020), *overruling on other grounds recognized by*,

_____

drugs in the past, she did not give her any specific timeframe. Thus, her testimony cannot negate Knighton's contention that she was not using drugs during this specific incident. And even if it could, Reno's testimony says nothing about using drugs in front of the children or what Knighton admitted to anyone at the time.

No. 25-60383

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024). Thus, the district court wrongly denied summary judgment on this claim.

### J. Right to Familial Association

The last federal claim Knighton brings is for a violation of her right to familial association against Sheriff Goolsby and Officer Belew.

The right to family integrity is "a form of liberty guaranteed by the due process clause of the Fourteenth Amendment, including the rights to conceive and to raise one's children and to maintain the integrity of the family unit." *Marks v. Hudson*, 933 F.3d 481, 485 (5th Cir. 2019) (citation modified). These claims are "analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999). "[W]here the two interests overlap and create a tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity." *Id.* But this defense fails "when the facts of a case place it squarely on the end of the continuum where the state's interest is negligible and where the family privacy right is well developed." *Id.*

Viewing the evidence in the light most favorable to Knighton, as discussed above, Sheriff Goolsby and Officer Belew could have fabricated evidence which resulted in the removal of Knighton's children from her custody. While the State certainly has an interest in removing children from the care of a mother who is on drugs, Knighton denies she was on drugs. By her telling, this incident was motivated by Kathy's animus towards her, which means that this case falls well on the family privacy side of the continuum. Thus, again, if the jury believes Knighton, it could find a constitutional violation.

16

While "[a] balancing test is difficult terrain for a party having to prove a clear violation of the law," these facts, viewed in Knighton's favor, meet this burden. *Romero v. Brown*, 937 F.3d 514, 520 (5th Cir. 2019). Other panels of our court have found it clearly established that officials may not "temporarily remove children from their parents[] without affording the parents due process of law," *Stewart v. Perry*, 369 F. App'x 593, 594 (5th Cir. 2010) (per curiam), nor may they knowingly "make[] a false statement or omission that results in the issuance of a warrant without probable cause." *Wernecke v. Garcia*, 452 F. App'x 479, 483 (5th Cir. 2011) (per curiam). And "an actionable Fourteenth Amendment claim exists for a false affidavit submitted to a court for the purpose of obtaining a child seizure order." *Marks*, 933 F.3d at 486. So, it is clearly established that fabricating evidence in order to remove children from their parent is unconstitutional and Goolsby and Belew are not entitled to qualified immunity.

## IV. State Claims

Knighton also asserts claims under Mississippi law for intentional infliction of emotional distress ("IIED") and malicious interference with familial relationship against Kathy, malicious prosecution against Kathy and Sheriff Goolsby, and conspiracy against all Defendants.[8] However, Knighton has not shown any Mississippi law adopting a malicious interference with familial relationship tort, so summary judgment should be granted on that claim.

---

[8] Knighton abandoned her assault and battery claims below.

No. 25-60383

## A. Jurisdiction

"[W]e have limited jurisdiction to conduct an interlocutory review of a district court's order denying a motion for summary judgment based upon qualified immunity." *Hogan v. Cunningham*, 722 F.3d 725, 730 (5th Cir. 2013) (citation modified). However, "[f]ederal qualified immunity does not apply to state-law claims." *Tuttle v. Sepolio*, 68 F.4th 969, 976 (5th Cir. 2023). Still, we "may review denials of immunity under Mississippi law because the immunity is a protection from suit." *Walton v. City of Verona*, 82 F.4th 314, 320 (5th Cir. 2023).

Defendants raise immunity under the Mississippi Tort Claims Act ("MTCA"). The MTCA waives sovereign immunity for municipalities for torts committed by "their employees while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5(1). This is an exclusive remedy, so any suit against a government employee must be brought under this statute. *Id.* § 11-46-7(1); *Ricks v. City of Winona*, 858 F. Supp. 2d 682, 690 (N.D. Miss. 2012). However, this does not apply unless an employee is acting within the course and scope of their employment or if their conduct involved malice. Miss. Code Ann. § 11-46-5(2).

Since Kathy was not acting under color of law, we conclude she was not acting within the course and scope of her employment either, so the MTCA does not grant her immunity. *See, e.g.*, *Gomez v. Galman*, 18 F.4th 769, 781 (5th Cir. 2021) (per curiam) (noting that the burden to show an officer was acting within the course and scope of their employment is "even greater" than showing they were acting under color of law).

Some of Knighton's state law claims against Belew and Goolsby also fall outside of the MTCA because they must involve malice. *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 83 (Miss. 2017). For example, malicious prosecution falls outside the MTCA because malice is an essential element

of it. *See, e.g.*, *Springfield v. Members 1st Cmty. Fed. Credit Union*, 106 So. 3d 826, 829 (Miss. Ct. App. 2012). However, the MTCA applies to the IIED claim, but only "to the extent [that it] . . . is [not] predicated on malicious conduct." *Springer v. Ausbern Constr. Co.*, 231 So. 3d 980, 987 (Miss. 2017). And conspiracy similarly likely falls under the MTCA.[9] So, defendants have no state law immunity for the malicious prosecution claims. But they may have immunity for the IIED and conspiracy claims.

Still, there is a genuine dispute of material fact regarding whether the Defendant's actions were in the course and scope of their employment or involved malice. *See Sanders v. Attala Cnty.*, 332 So. 3d 292, 303 (Miss. Ct. App. 2021). According to Knighton's version of events, Kathy always disliked her and so worked with Officer Belew and Sheriff Goolsby to manufacture evidence in order to take her children away from her. So, a reasonable jury could also conclude that they were not acting in the course and scope of their employment (particularly Officer Belew since he had no formal role in law enforcement investigations). *See* Miss. Code Ann. § 11-46-5 (noting that an employee is not acting within the course and scope of his employment if his "conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations"). So, there is a genuine dispute of material fact regarding whether the MTCA immunity applies to these claims as well.[10]

---

[9] It is unclear exactly whether conspiracy falls under the MTCA because the Mississippi Supreme Court has never explicitly decided the question. *See Patterson v. Miss. Dep't of Mental Health*, No. 1:22-CV-196, 2023 WL 4242755, at *4 (N.D. Miss. June 28, 2023). However, the Mississippi Supreme Court has still applied the MTCA to a conspiracy claim. *See Moton v. City of Clarksdale*, 367 So. 3d 979, 982–83 (Miss. 2023).

[10] Defendants also argue that Knighton's state law claims should be dismissed based on the failure to comply with the MTCA's notice provision. *See* Miss. Code Ann. § 11-46-11. However, the notice requirement similarly does not apply for torts done outside the course and scope of employment. *See Springer*, 231 So. 3d at 988; *Beacham v. City of*

No. 25-60383

So, the MTCA categorically does not apply to Knighton's malicious prosecution claims and there is a genuine dispute of material fact regarding whether it applies to her conspiracy and IIED claims. However, we may still exercise pendent appellate jurisdiction over the state law claims because they are sufficiently intertwined with the federal claims. *See Batiste v. Theriot*, 458 F. App'x 351, 359–60 (5th Cir. 2012) (per curiam). And since the facts are identical and the elements are similar, it is proper for us to consider these claims at this stage.

## B. Malicious Prosecution

A malicious prosecution claim in Mississippi has six elements: "(1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution." *Miles v. Paul Moak of Ridgeland, Inc.*, 113 So. 3d 580, 585 (Miss. Ct. App. 2012).

Both Kathy and Sheriff Goolsby argue that there is no evidence of malice. They are correct that malice speaks to a subjective intent, but "[m]alice may be and usually is shown by circumstantial evidence." *Funderburk v. Johnson*, 935 So. 2d 1084, 1097 (Miss. Ct. App. 2006). The "absence of probable cause for the prosecution is circumstantial evidence of malice." *Magyar v. Shiers*, 426 So. 3d 312, 322 (Miss. Ct. App. 2025).

A jury could conclude Kathy acted with malice. Knighton testified at length about the conflict between the two of them. So, a trier of fact could conclude that Kathy concocted this incident (and falsified evidence, as

---

*Brookhaven*, No. 5:22-CV-65, 2023 WL 4918346, at *3 (S.D. Miss. Aug. 1, 2023); *Burroughs v. City of Laurel*, No. 2:19-CV-48, 2019 WL 4228438, at *2 (S.D. Miss. Sept. 5, 2019).

No. 25-60383

Knighton argues) in order to remove her children from Knighton's care. After all, this is more than just Knighton's "subjective feeling or belief" about why Kathy acted, it is evidence of long running enmity in conflict over family matters. *See Dowdy v. Grayson*, 416 So. 3d 132, 140 (Miss. Ct. App. 2025). This creates a genuine dispute of material fact regarding Kathy's subjective motivations.

However, there is no evidence in the record that Sheriff Goolsby acted with malice. "[M]alice occurs when the primary purpose of prosecuting is one other than bringing an offender to justice." *Miles*, 113 So. 3d at 586. As discussed above, there is some evidence that Sheriff Goolsby may have made false statements to justify arresting Knighton, but he also had probable cause to arrest her. There is no evidence, only conjecture, that he had any other motivation for his actions. So, Goolsby is entitled to summary judgment on the malicious prosecution claim.

## C. Intentional Infliction of Emotional Distress

Knighton next brings a claim for menace which is properly analyzed as IIED. An IIED claim requires a showing that

> 1. The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; 2. The defendant's acts are ones which evoke outrage or revulsion in civilized society; 3. The acts were directed at or intended to cause harm to the plaintiff; 4. The plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and 5. Such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Rainer v. Wal-Mart Assocs., Inc.*, 119 So. 3d 398, 403–04 (Miss. Ct. App. 2013) (citation modified). Again, Kathy challenges the malice prong.

As discussed above, there is a genuine dispute of material fact regarding whether Kathy acted with malice. Viewing the facts in the light

most favorable to Knighton, Kathy always disliked her and so leveraged her connections in local government to get her grandchildren away from Knighton. Like Officer Belew, she reported incriminating information to Sheriff Goolsby that Knighton argues was false. This kind of behavior, if believed by the jury, would certainly be sufficiently outrageous.

## D. Conspiracy

Finally, Knighton's conspiracy claim against all Defendants should proceed. "To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). Defendants challenge the agreement element.

The elements of a civil conspiracy are largely analogous to the elements of a criminal conspiracy. *Id.* at 339. Under Mississippi criminal law, "the jury may infer a conspiracy from the circumstances, acts, and conduct of the alleged conspirators." *Stokes v. State*, 141 So. 3d 421, 428 (Miss. Ct. App. 2013); *see also Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 980 (Miss. 2004) (noting that a conspiracy in a § 1983 context may be proven by circumstantial evidence). There is no direct evidence of an agreement. But since there is a genuine dispute of material fact that Kathy and Officer Belew both fabricated evidence by reporting allegedly false information to Goolsby, a jury could reasonably infer that they agreed to do so.

The evidence of conspiracy is more attenuated for Sheriff Goolsby. But he arguably fabricated evidence by making a false affidavit and a jury could infer from this action that he had joined the agreement to fabricate

No. 25-60383

evidence against Knighton.[11] If the jury believes Knighton, the Defendants' conduct is similar enough that a jury could believe it was the result of an agreement to frame her.

## V. Conclusion

For the foregoing reasons, we REVERSE in part the district court's denial of summary judgment and DISMISS the appeal in part.

As to Benton County, we DISMISS the appeal.

As to Kathy Graves, we REVERSE the district court's denial of summary judgment of the federal claims and the malicious interference with a familial relationship claim. We DISMISS the appeal as to the malicious prosecution, intentional infliction of emotional distress, and conspiracy claims.

As to Steve Belew, we REVERSE the district court's denial of summary judgment as to the false arrest and abuse of process claims. We DISMISS the appeal as to the unlawful seizure, excessive force, fabrication of evidence, right to familial association, and conspiracy claims.

As to Robert Goolsby, we REVERSE the district court's denial of summary judgment as to the unlawful seizure, false arrest, excessive force, abuse of process, and malicious prosecution claims. We DISMISS the appeal as to the fabrication of evidence, right to familial association, and conspiracy claims.

---

[11] There is no evidence that Sheriff Goolsby was involved in any way with any misconduct at the time he made the arrest. It wasn't until *after* he arrested Knighton that he submitted an arguably false affidavit about her drug use in front of her children. So, a jury could infer a conspiracy from Goolsby's conduct at that point. But there is no evidence that Goolsby played any role in an alleged conspiracy until he made a false affidavit.

No. 25-60383

We DISMISS the appeal as to all official capacity claims.

We REMAND the claims for which the appeal was dismissed for further proceedings consistent with this opinion.